IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| NORMAN BAMBER, M.D. ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 17-00229-CV-W-ODS |
| ) | |
| PRIME HEALTHCARE KANSAS ) | |
| CITY - PHYSICIAN'S SERVICES, LLC, ) | |
| ) | |
| Defendant. ) | |

<u>ORDER (1) GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTIONS IN LIMINE, AND (2) GRANTING IN PART, DENYING IN
PART, AND DEFERRING IN PART PLAINTIFF'S MOTIONS IN LIMINE</u>

Pending are motions in limine filed by both parties. As set forth below, Defendant's motions (Doc. #125) are granted in part and denied in part, and Plaintiff's motions (Doc. #127) are granted in part, denied in part, and deferred in part. The parties are reminded these rulings are interlocutory. Thus, the denial of a request to bar evidence at this juncture preserves nothing for review, and the parties may re-assert their objections at trial if they deem it appropriate to do so. Evidence barred by this Order shall not be discussed in the jury's presence (including during opening statements) without leave of the Court. The parties are free to suggest (out of the jury's presence) that something has occurred during the trial justifying a change in the Court's interlocutory ruling.

## A. DEFENDANT'S MOTIONS IN LIMINE

### (1) Issues Decided on Summary Judgment

Defendant moves to exclude evidence and argument beyond "the narrow issue of materiality of the breach to justify termination." Doc. #117. In deciding Defendant's motion for summary judgment, the Court stated:

> I conclude that the contract is not ambiguous as to Dr. Bamber's pertinent duties, that there was an anticipatory breach of duty to perform inpatient consultations at the adjoining hospital, that he was terminated after being given adequate notice, but that there is a remaining question as to the materiality of the breach. Thus, only partial judgment in favor of defendant

> should be granted at this time…. The difficulty in the contract is not posed by conflicting or otherwise ambiguous terms but rather by terminology not immediately understandable by persons unfamiliar with hospital practice. Study of the filings and relying only on background that is not contested clarifies the situation….

Doc. #117, at 1-2.

Plaintiff argues Defendant's motion is vague, and therefore, it is unclear what evidence it seeks to exclude. He also contends he should be permitted to introduce evidence relevant to any aspect of his breach of contract claim. By way of example, Plaintiff points to the Medical Staff Bylaws and Rules and Regulations, which do not require physicians to perform inpatient consultations, and the On-Call Policy, which required physicians to perform inpatient consultations as part of the emergency department's call coverage. Plaintiff maintains these documents are relevant to the materiality of inpatient consultations as part of the employment agreement, and the jury needs to understand how the hospital and clinics operated.

As referenced in the Court's March 18, 2019 Order, Missouri courts are guided by the factors set forth in the Restatement (Second) of Contracts when determining whether a breach is material. Doc. #117, at 10-11 (citing *Randy Kinder Excavating, Inc. v. J.A. Manning Constr. Co.*, 899 F.3d 511, 517 (8th Cir. 2018) (citations omitted)). These factors include (1) "the extent to which the injured party will be deprived of the benefit which he reasonably expected"; (2) "the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived"; (3) "the extent to which the party failing to perform or to offer to perform will suffer forfeiture"; (4) "the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances"; and (5) "the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing." *Kinder Excavating*, 899 F.3d at 517 (citations omitted).

At trial, the parties' evidence should relate to the materiality of the breach, and in that regard, the parties should be guided by the Restatement's factors. Other than

necessary background information, evidence other than materiality of the breach will be excluded. Accordingly, Defendant's motion in limine is granted.[1]

**(2)  Call Pay**

Defendant asks the Court to prohibit Plaintiff from presenting evidence or argument that Plaintiff is owed damages for emergency department on-call coverage because Defendant was no longer providing emergency care for neurological concerns at the time Defendant terminated the agreement it had with Plaintiff. Plaintiff argues call coverage compensation is relevant, and he should be allowed to offer testimony and evidence about call coverage compensation. Plaintiff states he does not intend to testify about call pay as an element of damages. Pursuant to Plaintiff's concession, Defendant's motion is granted. Plaintiff shall not argue or present evidence or testimony that he is owed damages for on-call coverage. Plaintiff will be permitted, however, to present evidence relating to on-call compensation as historical context for the present dispute.

**(3)  Special Damages**

Defendant seeks to preclude Plaintiff from referencing or requesting special damages, including the cost Plaintiff incurred to reopen his practice and resume treatment of patients. Plaintiff argues Defendant seeks to contravene the Court's prior order, and Plaintiff "should be permitted to discuss all types of damages at trial." Doc. #141, at 3.

Previously, the Court granted Defendant's motion for summary judgment on Count II, which sought special damages for breach of contract. As the Court explained:

> "Special" damages are those which may be allowed for the breach of certain types of contracts, and include amounts which are not considered to arise "naturally" or "usually" from the breach of contract. Special damages are damages that "actually result from a wrongful act but are the product of the special circumstances of the case or are peculiar to the non-breaching party." *Raineri Const[r]. LLC v. Taylor*, 63 F.Supp.3d 1017, 1033 (E.D. Mo. 2014) (*quoting Porter v. Crawford & Co.*, 611 S.W.2d 265, 271 (Mo.Ct.App. [1981])). Included in Dr. Bamber's request

---

[1] Regarding the two exhibits referenced in Plaintiff's response to this motion in limine, if counsel desires to introduce those exhibits, that issue must be raised with the Court outside the jury's presence.

> for "special damages" are the costs he incurred "to reopen his practice and resume his treatment of patients" after the termination of his employment. He includes such items as malpractice insurance, clinic space, wages for his staff, billing services, storage of his items from his office while employed by Prime and a computer to keep his records moving forward. (Doc. 87, ¶ 13).
>
> * * * *
>
> Prime agrees that Dr. Bamber's alleged damages are "the amount of salary, benefits or other compensation to which he would have been entitled under the Agreement had it not been terminated, minus any income he actually earned (or should have earned)" for the three year period before the Agreement could have been terminated by either party. (Doc. 81, p.11-12). Thus, some of the items of damage Dr. Bamber claims as "special damages" are potentially included in calculating benefit of the bargain damages…. However, Dr. Bamber has not provided any evidence that staff wages, billing services, storage or other such expenses might have been contemplated by the parties…. Further, the record currently before this Court contains no evidence as to Dr. Bamber's current compensation package or practice structure, and thus, the items to be included as damages are best left to be determined at any trial. There is no evidence or cogent argument presented that actual or ordinary benefit of the bargain damages cannot fully compensate Dr. Bamber. He is entitled to be fully compensated for his alleged loss, but not recover a windfall. *Ameristar Jet Charter, Inc. v. Dodson Int'l Parts, Inc.*, 155 S.W.3d 50, 54 (Mo. [b]anc. 2005). Prime's motion for partial summary judgment seeking dismissal of Count II is therefore GRANTED.

Doc. #110, at 15-16.

Pursuant to its earlier decision, the Court grants Defendant's motion. Plaintiff shall not introduce evidence or make arguments related to special damages. Instead, Plaintiff's recovery is limited to benefit of the bargain damages and those damages "naturally and proximately caused by the commission of the breach and for those that could have been reasonably contemplated by the defendant at the time of agreement." *Gill Constr., Inc. v. 18th & Vine Auth.*, 157 S.W.3d 699, 717 (Mo. Ct. App. 2004) (citation omitted); *see also Cason v. King*, 327 S.W.3d 543, 548 (Mo. Ct. App. 2010) (citation omitted); Mo. Approved Instruction 4.01 (2012).

**(4)     Witnesses' Speculation and/or Improper Opinions**

Defendant moves to prohibit Plaintiff and lay witnesses from testifying about (1) admittance of patients presenting neurological issues to reduce emergency room wait

4

times, (2) St. Joseph Medical Center being on "stroke diversion" when Plaintiff was not available for an emergency neurosurgical call, (3) someone needed to be on call in the emergency room for neurological services and/or Defendant needed to offer such services, (4) whether Defendant's rules and regulations required inpatient consults from Plaintiff, (5) Defendant looking for a reason to terminate Plaintiff's contract, and (6) cost-cutting and other evidence of Defendant's motive for terminating Plaintiff's contract. Plaintiff does not intend to offer opinion testimony regarding whether St. Joseph Medical Center was required to be on stroke diversion if he was unavailable for emergency neurosurgical department call coverage. But Plaintiff argues he should be permitted to testify about or discuss the other topics identified by Defendant.

"A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602. To the extent Plaintiff has <u>personal</u> knowledge on the other matters identified by Defendant, he will be permitted to testify about those matters. The same goes for lay witnesses who have personal knowledge about the matters identified by Defendant. Defendant's motion is denied with regard to Plaintiff and other witnesses who possess personal knowledge about the matters identified by Defendant. However, Defendant's motion is granted with regard to Plaintiff and other witnesses testifying on matters about which they have no personal knowledge. The parties should not construe the ruling on this motion as the Court deciding whether the matters identified by Defendant are relevant.

**(5)** **Contract Interpretation by Lay Witnesses**

Defendant moves to preclude Plaintiff or lay witnesses from testifying about how the employment agreement should be interpreted, and exclude testimony or legal conclusions regarding the elements of Plaintiff's claim. Plaintiff argues a "key issue at trial is whether inpatient consultations were a material requirement of the Employment Agreement," and therefore, evidence and testimony about the agreement's provisions, what Plaintiff understood the provisions to mean, and the facts and circumstances surrounding the parties' agreement should not be excluded. Doc. #141, at 8.

As noted *supra*, the Court already determined "the contract is not ambiguous as to Dr. Bamber's pertinent duties," but the one remaining question was whether the

breach of the agreement was material.  Doc. #117, at 1.  "A material breach is one where the breach relates to a vital provision (i.e., material term) of the agreement and cannot relate simply to a subordinate or incidental matter."  *Greenstreet v. Fairchild*, 313 S.W.3d 163, 169 (Mo. Ct. App. 2010) (citation omitted).  A material term "goes to the very substance or root of the agreement and cannot relate simply to a subordinate or incidental matter."  *G & J Holdings, LLC v. SM Props., LP*, 391 S.W.3d 895, 903 (Mo. Ct. App. 2013) (quoting *Patel v. Pate,* 128 S.W.3d 873, 878 (Mo. Ct. App. 2004)).

Plaintiff and lay witnesses will not be permitted to provide legal opinions or legal conclusions, and in this regard, Defendant's motion is granted.  Plaintiff and lay witnesses will not be permitted to offer testimony about how the employment agreement should be interpreted, and Defendant's motion is likewise granted on this issue.  However, Plaintiff and lay witnesses will be permitted to provide factual testimony that sheds light on materiality of the agreement's terms.  Thus, the remainder of Defendant's motion is denied.

**(6)     Hearsay Statements**

Defendant anticipates Plaintiff will introduce hearsay statements about (1) Defendant's discontinuation of neurosurgical emergency department on-call coverage and admittance of patients presenting neurological symptoms, (2) patients' ability to contact Plaintiff after his contract was terminated, (3) Plaintiff's new practice and that his patients would be fine, and (4) an email dated December 12, 2016, containing the number of outpatients, surgeries, and admittances Plaintiff had the week he was terminated and St. Joseph Medical Center's personnel's next steps after Plaintiff's termination letter was sent.  Plaintiff does not intend to discuss his patients' difficulty contacting him or what he heard nursing staff telling other doctors unless the topics arise during trial.  Plaintiff opposes the remainder of Defendant's motion.

Hearsay is inadmissible unless a federal statute, the Federal Rules of Evidence, or rules prescribed by the Supreme Court provides otherwise.  Fed. R. Evid. 802.  With regard to the statements Defendant seeks to exclude, the Court does not know the identities of the speakers, the content of the statements, and whether the statements are offered to prove the truth of the matters asserted therein.  If the statements constitute hearsay, the Court was not provided with sufficient information to ascertain

whether an exception to the hearsay rule applies. For the foregoing reasons, Defendant's motion is granted with regard to hearsay statements about patients' ability to contact Plaintiff after his termination and what Plaintiff heard nursing staff tell doctors; however, the remainder of Defendant's motion is denied.

**(7) Privilege Log**

Defendant requests preclusion of references to or testimony about Defendant's privilege log, including documents that were withheld and redactions made to documents produced. Plaintiff argues the privilege log is relevant because it shows Defendant's corporate office, prior to Plaintiff's termination, was looking for a way to take Plaintiff's compensation off the books. Plaintiff does not provide legal authority for his position and does identify what particular entries or information on Defendant's privilege log that he seeks to offer at trial.

Based upon the limited information provided, the Court cannot envision a situation where a portion of Defendant's privilege log would be relevant and admissible. Further, even if the privilege log was relevant and admissible, it is unclear how its probative value would not be substantially outweighed by unfair prejudice or confusion. Accordingly, the Court grants Defendant's motion.

**(8) Plaintiff's Complaints Regarding Defendant's Efforts to Market Practice**

Defendant moves to exclude Plaintiff's complaints about Defendant's efforts to market Plaintiff's practice before and after the contract was terminated. Defendant argues Plaintiff cannot quantify any loss from lack of marketing, and the introduction of Plaintiff's complaints will confuse the issues and prejudice Defendant. Plaintiff argues his patients had difficulty contacting him after his termination, and if the subject arises during trial, he would like to discuss the issue.

Any loss, including any loss due to Defendant's alleged failure to market Plaintiff's practice, resulting from Defendant's alleged breach of the agreement will be captured by Plaintiff's evidence as to what he is owed less the income he received. Discussing Plaintiff's complaints about Defendant's efforts to market his practice does not prove Plaintiff's damages. Accordingly, Defendant's motion in limine is granted.

**(9) Corporate Representative Testimony Outside Scope of Deposition Notices**

Defendant asks the Court to preclude Plaintiff from mentioning, referencing, or eliciting testimony from Defendant's corporate representatives about matters outside the scope of the representatives' deposition notices, and prohibit Plaintiff from mentioning those representatives were unable to answer questions outside the scope of the deposition notices. For examples, Defendant points to references to "target lists," whether Defendant was looking for a reason to find Plaintiff in breach of the contract, and the "stroke program." Plaintiff contends Defendant's motion is "so vague," he does not know what Defendant seeks to exclude. Nevertheless, he argues Defendant's objections to the scope of questioning during the depositions were improper, and corporate representatives' lack of knowledge is binding on Defendant.

The information missing from the parties' briefing is whether these individuals will be testifying live during the trial. If they are testifying live, the parties' dispute should not be an issue because those witnesses will testify only to those matters on which they have personal knowledge. Fed. R. Evid. 602. If a witness does not possess personal knowledge about the information being sought, the witness shall so state. The examination and cross-examination at trial is not limited to the topics listed in the corporate representatives' deposition notices.

If the parties intend to read excerpts from these individuals' depositions, the parties were obligated to designate those deposition excerpts, provide counter-designations, and file objections. To the extent the parties cannot resolve the disputes arising from their designations, counter-designations, and objections, the Court will address the matter prior to trial. For the foregoing reasons, Defendant's motion is denied.

**(10) Plaintiff's Disabled Child**

Defendant seeks to exclude information or evidence about Plaintiff's family members, including his children. More specifically, Defendant moves to preclude Plaintiff from discussing his child who suffers from cerebral palsy and blindness. Plaintiff opposes the motion, arguing he should be permitted to introduce himself to the jury, explain who he is, explain the burdens of call coverage and the impact of call coverage on his life, and the rational for additional pay above his base salary.

Defendant's motion is granted in part and denied in part. Plaintiff will not be permitted to discuss the medical conditions of his family members. Plaintiff has not demonstrated how family members' medical conditions are in any way relevant to his claim or damages. Plaintiff will be permitted to introduce himself, briefly provide his background information, and briefly explain the burdens and impact of call coverage. To the extent Plaintiff decides to mention his family, he shall do so in a limited fashion and provide only minimal details. The health of family members is irrelevant to this breach of contract case.

**(11) Plaintiff Being on a "Target List"**

Defendant believes Plaintiff will introduce evidence or elicit testimony that he was on a "'target list' found in a medical group analysis document that lists physicians who were too expensive for St. Joseph Medical Center." Doc. #125, at 18. Defendant contends multiple witnesses testified they never saw or heard about the "target list," and any testimony about the list would be speculation. Defendant also moves to exclude statements from individuals who informed Plaintiff of the list because the statements are hearsay. Plaintiff argues the document demonstrates Defendant's motivation for targeting and terminating him for financial reasons.

Unfortunately, neither party provided the Court with a copy of the "target list" along with their motion in limine briefing. Furthermore, the parties do not give the Court much information about the document – e.g., the identity of the person(s) who created the "target list," how the document was obtained, whether the document was produced in this matter, which party produced it, etc. Consequently, the Court is without sufficient information to issue a decision on this motion. However, before Plaintiff offers the list into evidence or elicits testimony about the list, Plaintiff's counsel should approach the bench and justify the admissibility of any such testimony or exhibits.

**(12) "Send a Message" Argument or Defendant's Net Worth**

Defendant contends evidence and argument concerning punitive damages or sending a message to Defendant should be precluded. Defendant also argues its net worth should not be introduced. Plaintiff agrees not to discuss Defendant's net worth. Accordingly, Defendant's motion is granted.

**(13) Expert Testimony on Behalf of Plaintiff**

Although Defendant listed "Expert Testimony on Behalf of Plaintiff" in the introduction to its motion, Defendant presented no argument or authority to support this motion. Accordingly, this motion is denied.

### B. PLAINTIFF'S MOTIONS IN LIMINE

**(1) Disposition of Pretrial Rulings**

Plaintiff argues references to and statements about the Court's disposition of pretrial rulings should be precluded. Defendant agrees evidence of pretrial rulings such as discovery resolutions and this Order should not be presented to the jury, but argues Plaintiff should not be permitted to introduce evidence on issues decided by the Court in its summary judgment rulings. The Court grants Plaintiff's motion to the extent he is seeking to preclude evidence or argument about the Court's Orders on motions in limine or discovery disputes. The Court denies Plaintiff's motion to the extent he is seeking to introduce evidence on issues already decided by the Court in its summary judgment decisions.

**(2) "Employed" By the Hospital**

Plaintiff moves to prohibit Defendant from stating or inferring he was "employed" by the hospital or he owed an obligation to the hospital because he was employed in an adjacent office practice. Plaintiff contends he was employed solely by Physician Services, and therefore, referring to him as an "employee" of the hospital would be misleading and prejudicial. Defendant opposes the motion because Plaintiff made references indicating he was an employee of the hospital during his deposition.

According to the parties' agreement, Plaintiff was employed by Defendant (or its predecessor), and pursuant to the agreement, Plaintiff provided neurosurgical services to hospitals where his patients received care and at which Defendant agreed to permit physicians to obtain appropriate medical staff privileges. The agreement does not indicate Plaintiff is an employee of the hospital.

While Defendant correctly quoted portions of Plaintiff's deposition testimony and other documents, the testimony and documents do not evince Plaintiff was an "employee" of the hospital. For example, Plaintiff responded affirmatively to a question

that was prefaced with "as an employed specialist at St. Joseph Medical Center." Doc. #129-1, at 3. Setting aside the words were used by the attorney and not Plaintiff, the question does not state Plaintiff was "employed" or he was a specialist "with" the hospital. *Id.* Instead, it refers to Plaintiff as a specialist "at" the hospital. This statement does not establish Plaintiff was an employee of the hospital, and it does not demonstrate Plaintiff indicated or referred to himself as an employee of the hospital.

Also during Plaintiff's deposition, Defendant's counsel asked Plaintiff if he and Plaintiff were talking about the same thing – i.e., the "employment agreement at St. Joseph Medical Center." Doc. #129-1, at 4. Plaintiff answered he "assumed we were talking about the same thing." *Id.* Again, counsel, not Plaintiff, made the statement, and the statement does not demonstrate Plaintiff was an employee of the hospital or represented himself to be an employee of the hospital. Plaintiff referred to his "contractual obligation to the hospital" during his deposition. Doc. #129-1, at 9. Because the hospital was a third-party beneficiary to the contract between Plaintiff and Defendant, Plaintiff's reference to his obligations to the hospital is not improper and does not demonstrate he was an employee of the hospital.

Defendant also points to two emails to supports its position. In one email, Plaintiff stated his "employment arrangement with St. Joseph Medical Center was terminated prematurely." Doc. #129-2. In the other email, Plaintiff states, "if St. Joseph's Medical Center and its parent corporation do not wish for me to continue providing additional call services, I am perfectly fine with that." Doc. #129-3. Similar to his deposition testimony, Plaintiff's references to the hospital do not establish he was an employee of the hospital or referred to himself as an employee of the hospital.

For these reasons, Plaintiff's motion is granted. Defendant shall not state, infer, or elicit testimony about Plaintiff being employed by the hospital. Defendant shall also instruct its witnesses to refrain from referring to Plaintiff as an employee of the hospital.

**(3)   Standard of Care**

Plaintiff argues Defendant should not be permitted to claim he deviated from the standard of care when he did not take inpatient consultations for the hospital's patients with whom he did not have a physician-patient relationship and without compensation. Defendant argues whether Plaintiff "deviated from the standard of care applicable to

11

employed physicians is directly relevant to" whether Plaintiff's breach of the agreement was material. In support of its argument, Defendant cites Jodi Finch's deposition testimony, Dr. Sloan's deposition testimony, Dr. Siegel's expert report, and the Medical Staff Bylaws. Doc. #129, at 4.

Jodi Finch testified the "applicable medical standard" meant "Plaintiff would see [a] patient" "if Plaintiff consulted to see [the] patient." Doc. #129-4, at 5-6. Finch does not discuss "standard of care." *Id.* Dr. Sloan testified "the standard of care for an employed specialist at a hospital would be to see patients in the hospital." Doc. #129-6, at 3. Dr. Siegel opined "it would have been…normal medical practice and standard in the industry, for a medical staff member and employed specialist…to provide inpatient consultations as reasonably requested by [Defendant]," and Defendant's request of Plaintiff to perform inpatient consultation services was "medically appropriate and reasonable in the industry." Doc. #129-5, at 5. Dr. Siegel said "acceptable medical standards require a doctor go where the hospital inpatient is located." *Id.* Dr. Siegel said Plaintiff deciding not to "provide on-site physician services…was not medically appropriate and breached his obligations to patients and [Defendant], as well as standards of care." *Id.* at 6. Finally, the Medical Staff Bylaws indicate medical staff members "assume all the functions and the responsibilities of appointment on the active Medical Staff, including, where appropriate, emergency service care and consultation assignments." Doc. #129-7, at 11.

"Standard of care" is a legal phrase. In Missouri, the standard of care is defined as the "degree of care, skill, and proficiency which is commonly exercised by the ordinarily skillful, careful, and prudent physician, *engaged in a similar practice* under the same or similar conditions." *Swope v. Razzaq*, 428 F.3d 1152, 1155 (8th Cir. 2005) (quoting *Yoos v. Jewish Hosp. of St. Louis,* 645 S.W.2d 177, 183 (Mo. Ct. App. 1982) (emphasis added)). The standard of care is utilized in medical malpractice lawsuits alleging a physician deviated from the standard of care, and therefore, was negligent. *See Wacker v. St. Francis Med. Ctr.*, 413 S.W.3d 37, 39 (Mo. Ct. App. 2013); *Lake v. McCollum*, 295 S.W.3d 529, 532 (Mo. Ct. App. 2009).

The Court has several concerns with Defendant attempting to use the phrase "standard of care" during this trial. First, "standard of care" has a distinct meaning. Its use outside the context of a medical malpractice lawsuit would not only mislead and

confuse the jury but would also unfairly prejudice Plaintiff. If the jury were to hear witnesses opine that Plaintiff deviated or breached his standard of care, the jury may assume Plaintiff was negligent in his medical duties. But that is not the case here. This lawsuit does not allege Plaintiff was negligent in performing his medical duties. In fact, Defendant's termination of Plaintiff's agreement had nothing to do with the quality of Plaintiff's work.

Second, as previously decided by the Court, the jury must determine whether Plaintiff's breach of the agreement was material. Doc. #117. As explained *supra*, there are five factors that provide guidance when determining whether a breach is material. *Kinder Excavating*, 899 F.3d at 517 (citations omitted); *see also McKnight v. Mw. Eye Inst. of Kan. City, Inc.*, 799 S.W.2d 909, 915 (Mo. Ct. App. 1990) (citations omitted). Defendant provides no legal authority supporting its argument that Plaintiff's alleged violation of the "standard of care" is a factor to be considered when determining whether a contract breach is material. Notably, as best the Court can tell, the parties' agreement does not contain the phrase "standard of care" or refer to the standard of care.

Third, Defendant argues the applicable standard of care required Plaintiff to perform new inpatient consultations at St. Joseph Medical Center. This matter is not about the applicable standard of care; it is about the parties' contract. Thus, the Court will not allow evidence, testimony, or argument as to what the applicable standard of care is and/or whether Plaintiff deviated from, breached, or violated the applicable standard of care. For the foregoing reasons, Plaintiff's motion is granted.

### (4)     Expert Testimony by Dr. Siegel

Plaintiff moves to exclude the expert testimony of Dr. Siegel because his opinions are contrary to the facts, misleading, and fall outside the testimony permitted by experts under Rule 702 of the Federal Rules of Evidence. Defendant opposes Plaintiff's motion arguing Plaintiff failed to timely file a *Daubert* motion, and therefore, has waived any *Daubert* challenge to Dr. Siegel or his testimony.

While the parties agreed to and proposed a deadline for *Daubert* motions, the Court's Scheduling Order did not set a deadline for *Daubert* motions. Docs. #25, 27. Accordingly, the Court finds Plaintiff's request to exclude Dr. Siegel's testimony has not been waived. However, Defendant's brief response to the substance of Plaintiff's

motion does not provide sufficient information or any legal authority. Accordingly, the Court defers consideration of Plaintiff's motion, and directs Defendant to file a response to this motion, not to exceed five pages, by no later than August 7, 2019.

**(5) Reliance on Counsel for Termination**

Plaintiff asks the Court to preclude Defendant from suggesting or stating it relied on legal advice when it made the decision to terminate Plaintiff's contract. Defendant argues Plaintiff's motion is moot because Defendant did not plead the affirmative defense of advice of counsel. Accordingly, Plaintiff's motion is granted.

**(6) Dr. Sloan's Opinion Testimony**

Plaintiff moves to preclude Dr. Kirk Sloan from providing opinion testimony because, unlike Plaintiff, Dr. Sloan had a hospital-based practice, and therefore, does not see patients outside the hospital setting. Defendant argues Dr. Sloan, a supervisor of all physicians and specialists, "intends to testify that [Plaintiff's] refusal to perform inpatient consultations violated the standard of care expected from [Defendant's] employed physicians." Doc. #129, at 6. Defendant again argues Plaintiff's alleged violation of the standard of care is relevant to whether his beach is material.

Pursuant to the Court's explanation *supra*, section B(III), Defendant will not be permitted to refer to or present evidence about the applicable standard of care. Plaintiff's motion is granted in that Dr. Sloan will not be permitted to testify about the standard of care, Plaintiff's alleged deviation from the standard of care, any connection between the standard of care and the agreement, what other physicians did with regard to inpatient consultations, or other matters not related to whether Plaintiff's breach was material. Plaintiff's motion is denied to the extent Dr. Sloan testifies about matters related to the materiality of Plaintiff's breach.

IT IS SO ORDERED.

DATE: July 31, 2019

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
UNITED STATES DISTRICT COURT