IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| NORMAN BAMBER, M.D. ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 17-00229-CV-W-ODS |
| ) | |
| PRIME HEALTHCARE KANSAS ) | |
| CITY - PHYSICIAN'S SERVICES, LLC, ) | |
| ) | |
| Defendant. ) | |

<u>ORDER AND OPINION GRANTING PLAINTIFF'S REQUEST TO
EXCLUDE EXPERT TESTIMONY OF DR. DAVID SIEGEL</u>

Pending is Plaintiff's request to exclude expert testimony of Dr. David Siegel. Doc. #127. For the following reasons, Plaintiff's request is granted, and Dr. Siegel's expert testimony is excluded.

## I. BACKGROUND

Included with Plaintiff's motions in limine was a request to exclude the testimony of Defendant's expert, Dr. David Siegel. Doc. #127. Defendant responded to Plaintiff's request by arguing the motion was untimely. Doc. #129. When issuing its rulings on the parties' motions in limine, the Court found Plaintiff's request to exclude Dr. Siegel's testimony was timely. Doc. #143, at 13-14. To allow Defendant an opportunity to respond to the substance of Plaintiff's request, the Court deferred its ruling on Plaintiff's request and directed Defendant to file a response. *Id.* Defendant submitted its opposition to Plaintiff's request, and Plaintiff recently filed a reply. Docs. #148-49.

## II. STANDARD

The admission of expert testimony is governed by Rule 702 of the Federal Rules of Evidence.

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will

> help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The district court must make a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology can be applied to the facts in issue." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592-93 (1993). The Court uses a three-part test when determining the admissibility of expert testimony:

> First, evidence based on scientific, technical, or other specialized knowledge must be useful to the finder of fact in deciding the ultimate issue of fact. This is the basic rule of relevancy. Second, the proposed witness must be qualified to assist the finder of fact. Third, the proposed evidence must be reliable or trustworthy in an evidentiary sense, so that, if the finder of fact accepts it as true, it provides the assistance the finder of fact requires.

*Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 686 (8th Cir. 2001) (internal quotations and citations omitted). "Courts should resolve doubts regarding usefulness of an expert's testimony in favor of admissibility." *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 758 (8th Cir. 2006) (citations omitted).

## III. DISCUSSION

Dr. Siegel is a "senior executive physician/attorney" who has more than twenty-five years of experience in healthcare, including health system management and consultant roles. Doc. #127-9, at 1. Dr. Siegel was in clinical practice, worked as an emergency department physician, and has served as a clinical professor of medicine, an examiner for the American Board of Emergency Medicine, and a Chief Medical Officer. *Id.* at 2. According to his report, Dr. Siegel will testify at trial to the following opinions:

- "[I]t would have been in the best interests of the hospital inpatients, as well as normal medical practice and standard in the industry, for a medical staff member and employed specialist such as Dr. Bamber to provide inpatient consultations as reasonably requested by Prime."

2

- "As indicated in the Medical Staff Bylaws and Medical Rules and Regulations, inpatient consultations are ordinary and expected professional services of an active medical staff physician at a hospital…. [P]rofessional medical services and acceptable medical standards require a doctor to go where the hospital inpatient is located. An active medical staff member and employed specialist insisting hospital inpatients travel to a clinic for care is not acting in the best interests of the patient. Prime's requested hospital inpatient consultation services to be performed by Dr. Bamber were medically appropriate and reasonable in the industry."

- "[D]iscontinuation of emergency department neurosurgical on-call coverage should have had zero effect on a medical staff member and employed specialist such as Dr. Bamber continuing to see inpatients in the hospital."

- "[T]here was never any expectation that Dr. Bamber would come into the St. Joseph Medical Center emergency room on an urgent case."

- "It is not accepted industry practice for a medical staff member and employed specialist such as Dr. Bamber to unilaterally limit his professional services to only seeing his clinic patients and rounding on patients for which he had performed prior planned surgeries on, and refusing to perform reasonable hospital in-patient consultations."

- "Dr. Bamber's decision to no longer provide on-site physician services reasonably requested by Prime, and instead only see hospital inpatients if they physically came to him in his clinic, was not medically appropriate and breached his obligations to patients and Prime, as well as standards of care."

- "[T]here is no question in my mind that the hospital inpatient consultations requested by Prime…were reasonable and met applicable medical standards."

- "Dr. Sloan's request was reasonable in the industry and consistent with medical staff's professional services obligations at a hospital because Dr. Bamber could perform these inpatient consultations involving non-urgent issues when he was working at or near the hospital anyway or when it was most convenient to him, and the inpatients would be followed by other physicians."

- "I…conclude that the contractual terms, including Section II…which includes required professional services of the physician, are reasonable and customary in the healthcare industry and standard in situations involving an employed specialist."

- "The contractual employment terms agreed to by the parties are standard, customary and reasonable in the healthcare industry…. Dr. Bamber was required to provide reasonable consultation assignments for hospital inpatients as requested by Prime. Dr. Bamber did not meet applicable medical standards because…he declined to put the interests of the hospital inpatients first and refused to provide the physician services reasonably requested by Prime."

- "Section 5.4 of Dr. Bamber's Physician Employment Agreement specifically states that other terms and conditions in the Physician Employment Agreement, such as those found in Section II, 'may be required to earn his/her Base Salary.' Despite this specific contractual provision, which is consistent with medical standards and

practice in the medical community, Dr. Bamber would only be accessible for patient care at his clinic, which violates accepted standards in the medical industry."
Doc. #127-9, at 5-8.

Plaintiff argues Dr. Siegel should not be permitted to testify because his opinions are contrary to the facts, fall outside the parameters of Rule 702, are subjective and speculative, and constitute inappropriate parol evidence. Although Dr. Siegel's opinion relies in part on the Medical Staff Bylaws or Rules and Regulations, Plaintiff argues the bylaws, rules, and regulations do not require physicians to perform inpatient consultations. Plaintiff also argues Dr. Siegel's references to "employed physician" and "on-site coverage" are inaccurate because he was employed by Defendant (not the hospital), the agreement defines the practice site as the medical office for the neurosurgical practice, and "on-site physician coverage" is different from "on-call coverage." Plaintiff contends fact witnesses, not expert witnesses, are warranted to determine materiality of breach; thus, Defendant "should be limited to providing testimony about its expectations and circumstances in entering the Employment Agreement through its own fact witnesses." Doc. #149, at 2.

Defendant asserts Dr. Siegel's specialized knowledge will assist the jury in understanding the complexities behind hospital administration and operations and help the jury determine whether Plaintiff's breach was material. According to Defendant, Dr. Siegel "will help the jury understand what expectations a hospital such as Prime would have had in contracting with a physician such as Plaintiff." Doc. #148, at 3. In this regard, "Dr. Siegel will opine it is not accepted practice for a staff member to limit his professional services to only seeing clinic patients and refusing to perform hospital in-patient consultations." *Id.* at 3-4. Defendant argues Dr. Siegel's opinion will address the extent to which Defendant was deprived of an expected benefit, and whether Plaintiff's conduct comports with good faith and fair dealing.

In addition, Defendant represents Dr. Siegel used a reliable methodology in formulating his opinions – that is, he analyzed "key documents in this case, including the parties' contract, correspondence and discovery." Doc. #148, at 5. He then applied his experience and the industry standards to the parties' conduct in this matter. Regarding disputes as to the facts underlying Dr. Siegel's opinions, Defendant contends those disputes do no render Dr. Siegel's opinions inadmissible but relate to his

4

credibility. Finally, Dr. Siegel's opinions, according to Defendant, are not legal opinions because they are based upon his experience.

The Court must first determine whether Dr. Siegel's opinions will be useful to the jury in deciding the remaining issue in this matter – specifically, whether Plaintiff's breach was material. Whether a breach was material is a question of fact. *Matt Miller Co. v. Taylor-Martin Holdings, LLC*, 393 S.W.3d 68, 88 (Mo. Ct. App. 2012). To determine whether a breach is material, the following factors are considered: (1) "the extent to which the injured party will be deprived of the benefit which he reasonably expected"; (2) "the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived"; (3) "the extent to which the party failing to perform or to offer to perform will suffer forfeiture"; (4) "the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances"; and (5) "the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing." *Randy Kinder Excavating, Inc. v. J.A. Manning Constr. Co.*, 899 F.3d 511, 517 (8th Cir. 2018) (citations omitted).

While Defendant maintains Dr. Siegel's opinions will shed light on the first factor, only Defendant would know what it reasonably expected when it entered the agreement with Plaintiff and the extent to which it has been deprived of that benefit. Dr. Siegel's opinions as to what is "ordinary and expected" or "typical" of medical professionals in the industry does not establish the benefit Defendant reasonably expected to receive and how it has been deprived of that benefit. Accordingly, Dr. Siegel's opinions are not relevant to the first factor for determining whether a breach is material.[1]

Defendant also maintains Dr. Siegel's opinions will assist the jury in considering the fifth factor: whether Plaintiff's conduct comported with the standards of good faith and fair dealing. Defendant argues if the jury agrees with Dr. Siegel that "in-patient consultations are standard in the industry, it may reasonably conclude his behavior did

---

[1] Furthermore, even if Defendant reasonably expected what is "ordinary and expected" or "typical" of medical professionals in the industry, Defendant does not explain why its representatives cannot testify to those issues or why it is useful and/or necessary for Dr. Siegel to provide expert testimony.

5

not comport with good faith and fair dealing…." Doc. #148, at 4. According to the Restatement (Second) of Contracts, "[s]ubterfuges and evasions violate the obligation of good faith in performance even though the actor believes his conduct to be justified." Restatement (Second) of Contracts § 205 cmt. d (1981). Examples of "bad faith" include but are not limited to "evasion of the spirit of the bargain, lack of diligence…, willful rendering of imperfect performance…[and] failure to cooperate in the other party's performance." *Id.*; *see also L.L. Lewis Constr., L.L.C. v. Adrian*, 142 S.W.3d 255, 263 (Mo. Ct. App. 2004) (quoting Restatement (Second) of Contracts § 205 cmt. d). In this case, the "spirit of the bargain," "lack of diligence," "imperfect performance," and "failure to cooperate" are not established through expert testimony. Instead, these matters would be evinced by the parties' contract. Consequently, Dr. Siegel's testimony is not relevant to the fifth factor for determining whether the breach of contract is material.

Dr. Siegel's reliable methodology for formulating his opinions consisted of reviewing "key documents" and interviewing Dr. Sloan, the Chief Medical Officer at St. Joseph Medical Center. Doc. #127-9, at 3-4. At trial, the jury will have the opportunity to review the parties' contract, their correspondence, and numerous documents produced by the parties. *See* Docs. #132, 136. The jury will also hear testimony from at least some of the individuals (i.e., Dr. Sloan, Jodi Fincher, and Plaintiff) interviewed by or whose depositions were reviewed by Dr. Siegel in preparing his opinions. Doc. #127-9, at 3; Doc. #150. When analyzing the information, the only difference between Dr. Siegel and the jury is Dr. Siegel's application of industry expertise. Doc. #148, at 5. Defendant fails to show Dr. Siegel's expertise would be useful to the jury, who will be relying on the same information and documents, in deciding whether Plaintiff's breach was material. The Court finds Dr. Siegel's testimony is not relevant or useful to the jury, and therefore, his testimony is inadmissible.

In addition, some of Dr. Siegel's opinions are speculative or provide legal conclusions. For example, Dr. Siegel opines the "discontinuation of emergency department neurosurgical on-call coverage should have had zero effect on a medical staff member…continuing to see inpatients in the hospital." Doc. #127-9, at 5. Without addressing the relevancy of the issue, Dr. Siegel is simply speculating. As for legal conclusions, Dr. Siegel opines the terms of the parties' agreement were "reasonable

6

and customary in the healthcare industry" and "consistent with medical standards"; Defendant's requests of Plaintiff were "appropriate," "reasonable," and "met applicable medical standards"; and Plaintiff's actions were "not medically appropriate," "not reasonable," and "breached his obligations to patients" and Defendant. *Id.* at 5-7. "Opinions that are phrased in terms of inadequately explored legal criteria or that merely tell the jury what result to reach are not deemed helpful to the jury,…and thus, are not admissible" under Rule 702 of the Federal Rules of Evidence. *United States v. Whitted*, 11 F.3d 782, 785 (8th Cir. 1993) (citation and internal quotations omitted). Dr. Siegel's opinion that Plaintiff breached his obligations to patients and Defendant is a legal conclusion that is inadmissible. Also, Dr. Siegel's opinions about what is reasonable, unreasonable, customary, and/or consistent with medical standards are couched as legal conclusions and tell the jury what result it should reach. For this additional reason, Dr. Siegel's testimony is not admissible.

## IV.     CONCLUSION

For the foregoing reasons, Plaintiff's request to exclude the expert testimony of Dr. Siegel is granted.

IT IS SO ORDERED.

DATE: August 14, 2019

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
UNITED STATES DISTRICT COURT